Appellant. Mr. Katzoff for the appellants, Mr. Haunt for the appellate. May it please the court, Howard Katzoff, I'll be arguing on behalf of the appellants Melvin Knight and Aaron Thorpe. This is an appeal that follows the district court's denial of appellants' ineffective assistance of counsel claims regarding their superior court counsel. The representation in the ineffective assistance claims representation led to the non-acceptance of very favorable wire plea offers and very severe, much more severe convictions and sentencing consequences, approximately 20 years for each appellant. Appellants maintain that both of their attorneys provided ineffective assistance of counsel. Appellants maintain that they both suffered strickland prejudice as it is basically defined under the plea bargaining and non-acceptance of plea cases either based on ineffective representation and advice or allowing a plea offer to lapse without conveying it or adequately communicating regarding that. The under strickland and Laffer, the critical question is whether you showed a reasonable probability that but for the deficient performance, Knight would have accepted the plea, correct? That's and that's a fact question. And Judge Leon resolved it against you. So you need to persuade us that that finding was clearly erroneous, which is a tough hill to climb. Your Honor, I would submit that the analysis shows that a review of that issue shows that the district court was clearly erroneous. In particular, the district court noted two obstacles. One was contemporaneous evidence and the other was that Mr. Knight was not amenable to non-trial disposition. And there are significant problems with the court's analysis as to both. And he did that in a manner of dismissing or being very dismissive and suspicious of Mr. Knight's testimony when there's case law that supports the notion that the statements that he made at or about the time of the preliminary hearing when the plea lapsed really don't shed any real light on the situation. The first issue that was addressed. The Supreme Court said just the opposite. They say that ex post testimony by a defendant is not sufficient. And they say you should generally look to contemporaneous evidence. They say it's not sufficient by itself and that contemporaneous evidence is something that should be looked at. Right. So we don't put too much weight on the scale because Mr. Knight testified at the remand hearing that, well, yeah, I would have accepted the plea. But as several cases recognized and I think Aguiar supports, it's not always the case that the contemporaneous evidence sheds light under the circumstances of the case. And in this case, it doesn't shed light because the district. You can say it doesn't shed light. I mean, you can say it's light is clouded by various things. The various things you can say about say it's completely lightless. This seems to me absurd. Well, perhaps that's a little strong, but it's nearly useless in the in the sense. Pardon me for interrupting, but I mean, obviously, you have the problem that the defendant was, one can almost say, obsessed with the illusory hope of seeing his about to be born child born. And but then that was a fact. Right. And and, you know, you can make arguments to contradict it or to diminish its effect. But there it is. It's a fact out there. The problem was there was ineffective assistance of counsel in a major way at that point. The judge actually made a finding of ineffective assistance, but this attorney never spoke that argument. Right. I mean, I can see two different versions. Well, the it's hard to hold Mr. Knight accountable for his focus on wanting to a home or wanting to see his wife when the attorney one gives misinformation and says in a 30 to a 10 year mandatory is what he said, which was a misstatement of the law. And then over the two week period when he's supposed to be considering this and deciding whether to forgo his option to be home with his his wife, which really was illusory also because exactly what I don't know why you talk of his option to be home with his wife. Well, he wasn't going to make bond anyway. It's up to the lawyer to effectively represent him and tell him what his options are. This is what the plea is. This is what the consequences are of the plea. This is what the consequences are of non-acceptance. You have a difference of exposure of a guideline range of 30 to 72 months or you'll end up in federal court and you'll be looking at a 22 to 25 year sentence. And that wasn't done. So the fact that he stands and makes any comments is of what I consider to be of much less value. And I think the Thompson language from the 27 if there's 671, 677 that recognize that choices the defendant makes denying responsibility does not necessarily shed useful light on choices. A defendant would have made if he had been properly advised of pleading consequences. That was a sentencing guideline career offender case. And the Bird v. Skipper, the Sixth Circuit case, similarly said, whatever does desire a defendant exhibited at the time is not dispositive of what he would have done if properly informed and advised. And that's the situation. I didn't see any discussion of the failure of the lawyer to disabuse him of the notion that he was going to get out to have some chance of getting out to see this birth. Well, I don't know that that was front and center, but I know it wasn't front and center. But but somehow the the the district court clearly regarded Knight's notion about this as sort of an immovable obstacle that in Knight's mind, and therefore something that explains why he was not the requisite reasonable probability. Well, I would submit it's just it's completely erroneous based on the misadvice and lack of advice regarding the entire plea and consequences for an attorney not to visit his client once, not to review where the stakes and the severity of the consequences are so severe as they are in this case for both Mr. Thorpe and Mr. Knight to not visit one time. It's hard to hold that defendant who might have some hope of getting out or some hope of of of possible acquittal down the road responsible for that statement in a way that says, oh, he would have never accepted a plea if he was properly advised. I think that the Skipper and the Thompson language recognize a situation that we have here is a 20 year difference. And it's up to the attorney to effectively advise the client as to what the consequences are and what they will be if he does not accept the plea offer. And when it's not done, even one iota, then those statements really do shed little or no useful light on the comments that he made. The other items that the district court referred to, the May letter, that's not contemporaneous and it didn't really- Let's talk about that later time period when he's facing charges in federal court. So he gets a different lawyer, right? Your claims of ineffective assistance go only to the superior counsel lawyer. He gets a different lawyer in federal court whom you haven't said rendered deficient performance. He now knows he's facing federal charges. He knows it's a multi-count indictment with kidnapping and gun charges. It's a big deal. He gets another plea offer in federal court with a not ineffective counsel and he rejects it. Why isn't that pretty compelling evidence that he didn't want a plea? Well, it's really apples and oranges. It's not February 1st. It's not an ADW plea in superior court with a guideline range of 70. But it's a point in time when his counsel is not ineffective and he has pretty good reason to think that he's facing serious exposure. The plea offer that was extended in federal court in June involved pleading to three counts and 45 years of exposure. As opposed to the initial ADW plea, which was zero to ten, no mandatory minimum. And included at least one mandatory minimum of five years. And so there were three counts, kidnapping, possession of a firearm during a crime of violence. 45 years of exposure, but what would the guideline range have been? I'm not sure what the guideline range, but likely 20, high teens, 20 years. Just a completely different scenario than what was presented in superior court. And whatever the state of mind was there, again, has little useful value in terms of shedding light on what should have happened. When a zero to ten plea offer was made under these facts in this case on February 1. Never to go see the client in the two week period and come back and allow it to lapse. And from Mr. Thorpe's perspective, to have his attorney not do anything to even know what's going on to preserve, to protect Mr. Thorpe's attorney's duty to his client. To assure that he has a reasonable opportunity to accept that offer before it lapses. The totality of it is both were ineffective and that the lapse of remedy should apply in this case. And what about the Bar Council letter? He writes to the Bar Council. It's a kitchen sink litany of complaints against Iverson. But the complaint is not that you didn't pursue a plea option. The complaint was, you didn't get me to trial fast enough. In some respects, that's one of the complaints. But it is a kitchen sink variety complaint. And it doesn't really- Not put in the kitchen sink was, gosh, I had this plea offer and my lawyer never pursued it. Well, there's really no indication that Mr. Knight knew exactly what the ramifications of that plea offer were even then. Because that was water over the bridge. That had long ago passed. There's nothing in the record to suggest that his counsel at that time alerted him to the errors that had been made so that he could complain about that. This was his own internal ruminations and it was kitchen sink variety. It didn't suggest at all that if he was properly advised, he would have accepted the plea as he should have. And Mr. Thorpe wanted to, and so they were in a position to do it. If the attorneys had done what we submit attorneys reasonably should do under the circumstances. All right, shall we hear from the gentleman? Give him a few minutes on rebuttal. Good morning. May it please the court, Brian Hahn for the appellee United States. I'd like to first discuss Mr. Knight's claim of ineffective assistance of counsel. The trial court found that appellant Knight would not have accepted the plea offer had even had his attorney advised him. I think what is required under the law to find is whether or not there was a reasonable probability that it would. That's correct. And the trial court finds that there isn't a reasonable probability based on the record in this case. I think that this court has been discussing with appellant's lawyer many of the pieces of evidence the trial court looks at to make that determination. I think first he looks at appellant Knight's own testimony and his own express preferences at the time that this plea offer is made. He says he's not copying to it. I think the court's also discussed. You have some answer to the proposition that all that was affected by the precisely the ineffective assistance of counsel that we're talking about. So I think that when we're looking at what was affected by the ineffective assistance and what wasn't, I think the trial court's focus on what happens in district court is important to inform that. Because once appellant Knight goes to district court, he is indicted on all the charges that he's going to be facing. Okay, so he switched from the original scene to the federal court, okay. Correct. And he's not complaining that there was ineffective assistance in federal court. And on this record at least, there's no evidence that at the time he goes to his attorney and says, hey, that plea offer that they were offering in superior court back at the beginning of this case, what happened to that? My attorney didn't tell me about the serious consequences that I now know I face in federal court. I'm not sure how that's relevant. So I think that's relevant. I thought the district court's theory was that his rejection of the plea at the federal court stage undermines the probability that he would have accepted the plea at the superior court stage, right? So I think that's correct. But the question, what's the logic of that? As we've had spelled out here, they're completely different offers. So I'm not sure the substance of the offer is in the record, but even assuming that the plea offer is different, what's not in the record is any discussion between Appellant Knight and his district court attorney or between the government and Appellant Knight at the time of district court. We do have another sort of factoid about that scenario, and that is that his co-defendant, who would have been, it's on the record clearly, would have been happy to accept the plea in superior court, did not think the federal court offer was anything to grasp at. So I think what we have is that both Appellant Knight and Appellant Thorpe get plea offers in district court, and they reject them. Now, there's not a lot in the record about why that happens. And I think that in terms of if Appellant Knight has carried his burden to show a reasonable probability in this case, if there's no evidence in the record that he had any discussions with his attorney about whether or not he could get that superior court plea offer before,  I thought that the argument used by the district court was he rejected it, period, flat. And the inferences that we draw from that, and I question whether there are any powerful inferences to be drawn from it in light of the behavior of the co-defendant, who clearly showed at the superior court level that he liked the plea. So I think that the inference can be drawn that Appellant Knight didn't want the plea offer because he rejects the district court offer. I'm not sure that just because Appellant Thorpe also rejects the plea. Again, we don't know why that happens. Well, I mean, they were defendants facing similar, in fact, because they were wired pleas, identical situations, right? The trial separates them from the plea, of course, so it's not wired in the same way. But at any rate, largely identical situations. Thorpe likes the plea in the superior court. There's no question here that he would have accepted it. It's not really reasonable probability. It's certainty. And then we get to federal court, and he is not enticed by it at all. So why can't we assume that for Knight the calculations would have been the same had Knight been properly informed? I think I disagree that Appellant Thorpe, that it's clear what Appellant Thorpe's motivations are with the district court plea. I think his testimony is that he was given a plea and that he rejected the plea, but there isn't any testimony about why he rejects the plea, why he doesn't want that plea. Yeah. And I think that in that instance, we can't assume that it wasn't enticing to him and that he didn't want it. We can't assume that? I don't think so, Your Honor. I think that it could be that the situation very much like the situation in superior court happened, where the plea was wired and he wanted the plea and his codefendant didn't want the plea. We just don't have that information in the record. But we certainly have no reason to think that. I guess we just don't have any information in the record. We don't have much information. Maybe that's a reason not to attach great weight to this. So I think that in terms of the weight given to it, I think that there is some weight, at least, to this idea that appellants in district court, Appellant Knight, doesn't want the plea offer. There's no exploration at the hearing about why that is. And there's no exploration, at least no evidence from Appellant Knight that he went back to his attorney and said, hey, I want that older plea offer, the one that was a lot better. Is the Federal plea in the district court record? The Federal plea offer isn't in the district court record. What do we know about the terms of the Federal plea? So I think we know very little about the terms of the Federal court plea offer because it's not explored in the hearing after on remand. And it wouldn't have been filed contemporaneously. Right. It's just done off the record. Right. It wouldn't have been filed in court if they were not accepting the plea offer. What should the court's starting position be on assessing the probability of someone accepting a plea? I mean, is the proportion of criminal matters that get resolved by plea relevant to that? I don't think so, Your Honor. I think that the court's starting premise is that. It's the defendant's burden.  Let's put aside burdens for a moment. Let's just look at it fresh. And what are the probabilities that a plea will be accepted? So I'm not sure the court can put aside the burdens when it comes to it on this posture. But I don't think that the court can put aside the burden that's on the defendant. I think that it is the defendant's burden to do so. Well, I'm just asking you to look at it in the real world before we get to legal analysis. Okay? Sometimes we do that. We look at the real world. And we have, what is it, 97% of criminal matters are resolved by plea? So I think that there are a large percentage of criminal matters that are resolved by plea. I do think that pleas are accepted or rejected based on any number of factors. I doubt it. Any number of circumstances. Right. And I don't think the court can approach it saying, in every case, saying, look, defendant is going to accept this plea. There's a high probability the defendant is going to accept this plea. Defendants reject pleas for any number of reasons. I don't think that the court can assume. The reason that the plea was rejected is that there was incompetent counsel, in which case the second strictly criterion is fully satisfied. And I think the argument that we've been having here is whether or not that deficient performance caused Appellant Knight not to accept the plea offer. And, again, the trial court finds that it didn't, and that finding is a factual finding that's not clearly erroneous. We understand. You rest upon the clearly erroneous rule. Did the district court think the ADW offense was a mandatory minimum of 10 years? So I think it's a little bit confusing. Yes or no? I think it's a little bit confusing because at one point in the opinion, he talks about the guidelines, and then at a point he says that the statutory, or says the minimum is 10 years. So the answer is yes. He thought the ADW offense was a mandatory minimum of 10 years, which is clearly erroneous. So his thinking about the superior court plea could have been affected by that, if, indeed, he was even thinking about that. So I think that on that specific point, yes, that he could have been thinking differently about that. What I think is important to note is that the trial court You don't think that's significant? I don't think that's significant enough, because the trial court hears Mr. Knight testify. The trial court evaluates that testimony, and he says, you know what? I don't believe him, based on all of this other information in the record. Let's pursue that, because that's a potentially important point. So this comes from footnote 7 of the district court opinion. If you start at the end of the footnote, he's absolutely right. He says ADW is not the 10 years is not a mandatory minimum. It's a statutory maximum, and I assume that's correct. That's correct. Okay. So then the problem is what to make of the first sentence in the footnote, where he says he ultimately faced the prospect of superior court charges, plural, with a 10-year mandatory minimum, et cetera. Now, if he's saying that the ADW has a 10-year mandatory minimum, that's flatly wrong and flatly inconsistent with the last sentence. Is it the case that any of the other charges that the government offered to drop have a 10-year mandatory minimum? I don't believe so, Your Honor. I believe that all the other charges have 5-year mandatory minimums, but none have a 10-year mandatory minimum. So this first sentence is a bit puzzling. It doesn't quite say that ADW is a mandatory minimum, but it can't be reconciled with all of the sum total of the superior court complaint. Yes, Your Honor. And I think that that's why it was hard for me to answer that question from Judge Roberts with a yes or no, because, again, this footnote is inconsistent with itself. I did want to point out just another piece of evidence that the trial court looked at, and that is... So, at best, the district court was confused? I think either confused or one of these is a typographical. The first one is a typographical error. No one suggested that. I think that's... I mean, you haven't suggested it. I mean, it's just sort of unclear. It's clearly inconsistent, and it's also clearly wrong. Yes, but taking the district court words as we have them, at a minimum, it shows confusion. I think that that's certainly a good way of looking at it. Just one more piece of the record. I'm sorry. So why wouldn't that... Why doesn't that unravel your case? So I think that... The district court is assessing the probability of his accepting the plea on a materially wrong understanding of what the exposure was. So we think that the district court's reasoning doesn't rely on the difference between the exposure, because I think that when we're looking at the exposure difference, I think it's clear that the district court does understand the... And here's the testimony of what the guidelines would have been for the ADW plea in Superior Court. I don't think the district court's opinion rests on this sort of difference between 10 years and 268 months. No, but wouldn't the difference be a relevant consideration? So I do believe it is relevant. It just goes to how good the plea deal is. Yes. And, I mean, my own take on this case, for whatever it's worth, is that your adversary doesn't have a whole lot of I mean, 20 years versus, whatever, 20, 22, 30 months, something like that? I think the disparity is a factor to be taken into account. I just note that, you know, the cases that appellants file... So if that's a factor, then, and Judge Leon may or may not have it right, why wouldn't we remand to him to give him a chance to clean this up? So I think that if the court believes that the difference between that may impact the district court's decision, then a remand could be appropriate. I think that it's not because, again, of all of the contemporaneous evidence that appellant did not want to accept the plea, including the fact that he knew the victim and was hopeful that the victim wouldn't cooperate, and so was more willing to roll the dice at trial, which is, in fact, bolstered by the fact that he tries to convince the victim not to lie to the police and is convicted of obstruction for that. So if there are no further questions, I see I'm far past my time. Thank you. We'd ask that you affirm the district court. Okay. Counsel for appellant. First of all, I just want to correct. There was a reference a number of times that Mr. Thorpe rejected the plea offer in Superior Court, and that's as was explained by his counsel in the hearing. And as the transcript shows, he didn't reject it. He said, I neither accept or reject. And then that was further explained in the testimony at the hearing that the attorney just chose his words carefully, but that it was clear that Mr. Thorpe wanted to accept the plea in Superior Court. So it just has been repeated a number of times that whatever happened in Superior Court was a rejection, and the language was pretty clear. It was not a rejection. On the issue of reasonable probability, I think we cited in the reply brief the Gaviria case that noted in finding that reasonable probability was found that 15 to 22-year difference was significant for him in his 40s and seemed to support the notion that it was reasonably probable that if properly advised, would have accepted the plea. With regard to the plea agreement, I wasn't counsel below, and in preparing for the argument, I happened to be able to locate a draft of the agreement, which is the first that I saw the actual details. In the record, it didn't set out exactly what it was. It just stated that there was a plea, and they weren't interested in it. You agree the details are not in the district court record? That's correct. I would ask to be able to supplement with the agreement that I located. It's dated June 6, 2013, and it's addressed to, in this case, it relates to Aaron Thorpe, and I don't know if it's identical to Mr. Knight, but I would expect that it would be. At any rate, I'm happy to share it with the government, and if this is actually a document that was prepared, I would ask to be able to supplement the record. What was your last sentence about if this is a document that is actually prepared? What did you mean by that? Well, it says draft. It is on the Department of Justice letterhead suggesting it was sent from the U.S. Attorney's office to Mr. Thorpe's attorney on or about June 6, 2013, and it sets out the proposed plea to the three charges which carry the 45-year exposure, which I referenced here but I was not able to reference previously in the briefs because I hadn't located this particular item. So it's pretty clear you're located. Yes. It was located in one of Mr. Conte's files that just hadn't been- He's one of the prior lawyers. He's one of the prior lawyers. Otherwise- Are you talking about the prior lawyers for Thorpe? Yeah, the prior lawyer for Thorpe. And I don't believe that Knight's attorney had found the similar one, but I thought this was at least some evidence of what was on the table in federal court, which distinguished it from what was on the table in February in the Superior Court. Yes, and so did you contact Mr. Knight's attorney, attorney in federal court? His attorney is retired, and I'm not sure. I don't represent Mr. Knight. I'm arguing for both, but I did not. All right. Thank you. Anything further? No, I would ask the Court to find ineffective assistance that Strickland prejudice has been met and that the appropriate Sixth Amendment violations are remedied as discussed in Lafler to neutralize the taint and that the convictions be vacated and be remanded with directions to reoffer the original plea. Thank you. Thank you.
judges: Rogers, Katsas, Williams